## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey B. Fecht
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

Jeffrey C. Gerish
Plunkett Cooney
Bloomfield Hills, Michigan

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| United States Fidelity & Guaranty Insurance Co., et al.,[1] | December 29, 2017 |
| *Appellants-Defendants,* | Court of Appeals Case No. 54A05-1704-PL-874 |
| v. | Appeal from the Montgomery Circuit Court |
| Crawfordsville Square, LLC and Crawfordsville Square II, LLC | The Honorable Harry A. Siamas, Judge |
| *Appellees-Plaintiffs.* | Trial Court Cause No. 54C01-0508- PL-331 |

---

[1] The other named defendants include Allstate Insurance Co., Hoosier Insurance Co., Linnaeus Wheeler, Tamara Yount, Rick Bridwell, Thomas Shaver, the Estate of Mary L. Shaver, the Estate of J. Noel Shaver, and the Estate of Ruth S. Chaney and William R. Chaney. None of these nominal appellants are active participants in the instant appeal.

**Mathias, Judge.**

[1] United States Fidelity & Guaranty Insurance Company ("USF&G") challenges the trial court's denial of its motion for summary judgment on the issue of whether Crawfordsville Square, LLC and Crawfordsville Square II, LLC ("Crawfordsville Square") were entitled to coverage under general liability insurance policies issued to prior owners and occupants of property now owned by Crawfordsville Square. After the denial of USF&G's motion for summary judgment, the trial court later dismissed Crawfordsville Square's claims against all defendants in the case with prejudice. USF&G appeals and argues that the trial court erred in denying its earlier motion for summary judgment. We conclude *sua sponte* that USF&G was not aggrieved by the trial court's order. Accordingly, we dismiss USF&G's appeal as moot.

## Facts and Procedural History

[2] From 1984 to 1996, William R. Chaney ("William") owned property located on 201–203 East South Boulevard in Crawfordsville, Indiana ("the Property"). William operated a motorcycle repair shop on part of the Property and rented out the 203 address, which was used by several tenants as a dry-cleaning business.

[3] From 1984 to 1991, USF&G issued four general liability policies covering the dry-cleaning business. The first policy, in effect from 1984 to 1987, listed the named insured as Nate Shaver d/b/a Boulevard Cleaners. The second policy was in effect from 1987 to 1988 and also listed as the named insured Nate

Shaver d/b/a Boulevard Cleaners. The third policy, in effect from 1988 to 1990, listed the named insured as the Estate of Nate Shaver d/b/a Boulevard Cleaners. Lastly, the fourth policy was in effect from 1990 to 1991 and listed as the named insured as Mary Shaver d/b/a Boulevard Cleaners. William, as the owner of the insured premises and lessor, was named as an additional insured on each of the USF&G policies.[2] Each of the USF&G policies contained provisions that required the written consent of USF&G to any assignment of rights under the policies.[3]

[4]     William transferred the Property, via a quitclaim deed, to his wife Ruth S. Chaney ("Ruth") shortly before his death in 1996.[4] He did not assign his rights under the policies or attempt to obtain the consent of USF&G to any assignment of rights. On February 2, 1999, Ruth sold her interest in the Property to Crawfordsville Square, LLC. Ruth assigned to Crawfordsville Square any claims that might be asserted against parties liable for the remediation of the Property. But the transfer of assets did not mention the

---

[2] The fourth policy listed "W.R. Chaney" as an additional insured on one page and "R.W. Chaney" on the next. *See* Appellant's App. Vol. 2, pp. 216–17. It appears that this is a simple transposition of William's initials, as Ruth's middle initial is S., not W. *See* Appellant's App. Vol. 3, p. 29 (quitclaim deed referring to "Ruth S. Chaney").

[3] The first policy provided, "**Assignment of Policy.** This policy shall be void if assigned or transferred without the written consent of this Company." Appellant's App. Vol. 2, p. 95. The second policy provided, "**Assignment**. Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon." *Id.* at 101. The assignment provision of the third policy was worded much as the first: "**Assignment of Policy**. This policy shall be void if assigned or transferred without the written consent of this Company." *Id.* at 131. And the fourth policy provided, "**TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured." *Id.* at 242.

[4] More precisely, William quitclaimed the Property to himself and Ruth as "husband and wife." Appellant's App. Vol. 3, p. 29. Thus, when William died, Ruth became sole owner of the Property.

assignment of any insurance coverage, and USF&G did not consent to any assignment. In 2003, Crawfordsville Square, LLC transferred the Property to Crawfordsville Square II, LLC.

[5] The designated evidence indicates that the Property was contaminated by chemicals used in the dry-cleaning business that operated on the site from 1984 to 1991. On June 27, 2005, the Indiana Department of Environmental Management ("IDEM") sent Crawfordsville a notice of contamination and demand for remediation regarding the Property. Crawfordsville Square then filed suit against several entities seeking to recover the expense of remediating the contamination at the site of the Property.

[6] On July 31, 2006, Crawfordsville Square filed an amended complaint seeking recovery of remediation costs from USF&G. In its complaint, Crawfordsville Square explicitly alleged that it had no prior knowledge of this contamination at the site:

> 35.     Crawfordsville Square recently became aware of the Contamination when it conducted an investigation of the [Property] in preparation for the sale of the [P]roperty. The investigation discovered the presence of PERC [tetrachloroethylene] and other chemicals related to dry cleaning in the soil and groundwater.
>
> 36.     Prior clean-up efforts at the [Property] after the sale by Ruth Chaney indicated that all actionable levels of the contamination had been remediated, and the dry cleaning contamination that has given rise to this action could not have been discovered earlier despite the exercise of reasonable care.

Appellant's App. Vol. 3, p. 56.

[7]     On March 30, 2007, USF&G filed a motion for summary judgment, arguing that Crawfordsville Square was not an insured under the policies it had issued and that the coverage that existed under the policies was not assigned to Crawfordsville Square. Eventually, after Crawfordsville Square filed its reply and USF&G filed a surreply, the trial court held a hearing on USF&G's motion for summary judgment on June 29, 2007, at the conclusion of which the trial court took the matter under advisement. On July 12, 2007, the trial court entered an order denying USF&G's motion for summary judgment. The trial court concluded that Ruth could assign her claim for environmental remediation as a chose in action[5] as long as the contamination occurred prior to the assignment. As there remained other issues and parties, however, the order was not final, and USF&G did not seek to pursue the matter in an interlocutory appeal, nor did the trial court deem its order final by inclusion of the "magic language" of Indiana Trial Rule 56(C).

[8]     In 2008, our supreme court issued its opinion in *Travelers Casualty & Surety Co. v. United States Filter Corp.*, 895 N.E.2d 1172, 1180 (Ind. 2008), which held that a claim against an insured is a transferable chose in action that may be assigned without the consent of the insurer "if it is assigned at a moment when the

---

[5] A chose in action is a "proprietary right in personam, such as a debt owed by another person . . . or a claim for damages in tort . . . [or a] right to bring an action to recover a debt, money, or thing." *Midtown Chiropractic v. Illinois Farmers Ins. Co.*, 847 N.E.2d 942, 944 (Ind. 2006) (quoting BLACK'S LAW DICTIONARY 258 (8th ed. 2004)).

policyholder could have brought its own action against the insurer for coverage," and that this "does not [occur] until a claim is made against the insured. Put another way, at a minimum the losses must have been reported to give rise to a chose in action." *Id.* Thus, the trial court's order denying summary judgment in favor of USF&G was in apparent conflict with our supreme court's subsequent holding in *U.S. Filter*.

[9] Crawfordsville Square's action continued to be prosecuted until January 12, 2012, the date of the last entry in the trial court's chronological case summary where Crawfordsville Square took any action to further its case. On that date, Crawfordsville Square filed a motion to join in a motion to consolidate this case with another filed by IDEM. After several of the defendants objected to this motion to consolidate, the trial court denied the motion on January 26, 2012.

[10] No further action occurred in the case for almost five years. Accordingly, on January 10, 2017, the trial court issued a rule to show cause why the case should not be dismissed for failure to prosecute and set a hearing on the issue. At the February 13, 2017 hearing on the trial court's rule to show cause, only IDEM and some of the defendants, including USF&G, appeared. The court explicitly noted that Crawfordsville Square did not appear and concluded that the "complaint should be dismissed for failure to prosecute," but that it would "allow the cause to remain open to give USF&G 30 days to determine if it will pursue its claims." Appellant's App. Vol. 2, p. 7.

[11] There is no indication that USF&G pursued the claims the trial court referred to in its dismissal order. Accordingly, on March 27, 2017, the trial court entered an order dismissing Crawfordsville Square's claims with prejudice and dismissing any cross-claims and counterclaims without prejudice. The trial court's order explicitly noted that it "dispose[d] of all remaining claims as to all parties." *Id*. at 62. USF&G now appeals the trial court's 2007 order denying USF&G's motion for summary judgment.

## Discussion and Decision

[12] USF&G argues that the trial court erred in denying its motion for summary judgment in 2007. However, the trial court ultimately dismissed Crawfordsville Square's claims against all defendants, including USF&G. In other words, USF&G has obtained a result in its favor. Because the trial court's final order dismissed the claims against USF&G *with prejudice*, it has not been aggrieved by the trial court's earlier, interlocutory order denying its motion for summary judgment.

[13] It is well settled that a party cannot secure appellate review of a favorable decision unless it is in some manner aggrieved thereby. *Nehi Beverage Co, Inc.. of Indianapolis v. Petri*, 537 N.E.2d 78, 82 (Ind. Ct. App. 1989), *trans. denied*; *Hughes v. State*, 473 N.E.2d 630, 632 (Ind. Ct. App. 1985), *trans. denied*; *see also Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 780 (Ind. Ct. App. 2011) ("A party cannot appeal from a judgment favorable to him.").

Here, even though the trial court denied USF&G's motion for summary judgment, it ultimately dismissed with prejudice Crawfordsville Square's claims, including the claims against USF&G. Accordingly, we conclude that USF&G was not aggrieved by the trial court's final order and cannot appeal the trial court earlier, interlocutory order denying US&FG's motion for summary judgment.

Dismissed.


Vaidik, C.J., and Crone, J., concur.