Squire HENDERSON, Appellant–
Plaintiff,

v.

Marlon COUTEE, Danielle Montgomery, Jansen Rollins, Robert D. Walker, in their official Capacities as members of the Gary Firemen's Pension Board and the Gary Firemen's Pension Board, Appellees–Defendants.

No. 45A03–0408–CV–367.

Court of Appeals of Indiana.

June 28, 2005.

Nathaniel Ruff, Merrillville, for Appellant.

Jack G. Willard, Portage, for Appellees.

## OPINION

MAY, J.

Squire Henderson appeals summary judgment for the Gary Firemen's Pension Board and the Board members (collectively, "the Board"). Henderson raises three issues, which we consolidate and restate as whether the court erred when it granted summary judgment.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Henderson was born September 21, 1942, and was hired as a City of Gary firefighter on September 16, 1970. At that time, he became a member of the 1937 Firefighters Pension Fund. On October 30, 1997, after he had a heart attack, the Board placed Henderson on disability, where he remained for nearly five years.

In September of 2002, Henderson asked to be placed back on active duty. Robert Walker, his Fire Chief, told Henderson he would have to get clearance from the Board. On October 17, 2002, the Board held a meeting regarding Henderson. Henderson appeared for the meeting, but the Board told him to leave the room while it discussed his situation. At the end of the meeting, the Board transferred sixty-year-old Henderson from disability to retirement status.

On August 6, 2003, Henderson filed his complaint against the Board. The Board filed an answer and a motion for summary judgment. After a hearing, the court granted summary judgment.

## DISCUSSION AND DECISION

We review a summary judgment using the same standard applied by the trial court. Summary judgment should be granted "only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bushong v. Williamson,* 790 N.E.2d 467, 473 (Ind. 2003). We must construe all facts and the reasonable inferences therefrom in favor of the non-moving party. *Id.* We consider only the evidence designated to the trial court. *Id.*

The party seeking summary judgment has the initial burden to demonstrate there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Cansler v. Mills,* 765 N.E.2d 698, 701 (Ind.Ct.App.2002), *trans. Denied* 783 N.E.2d 695 (Ind.2002). Once the moving party meets its burden, the nonmoving party has the burden to designate evidence demonstrating a genuine issue of material fact. *Id.* "A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.*

Henderson first questions the trial court's interpretation of the 1937 Firefighters Pension Fund Act, Ind.Code ch. 36–8–7. The Board transferred sixty-year-old Henderson from disability status to regular retirement status pursuant to Ind.Code § 36–8–7–12.1(h) (hereinafter "Subsection 12.1(h)"), which provides: "A fund member who is receiving disability benefits under this chapter shall be trans-

ferred from disability to regular retirement status when the member becomes fifty-five (55) years of age." Despite the plain language of that statute, Henderson claims other statutes in that chapter required the Board to provide a hearing before it transferred him to retirement status.

The construction and interpretation of statutes are questions of law that we review *de novo*. *Kaser v. Barker*, 811 N.E.2d 930, 932 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 982 (Ind.2004). In other words, we give no deference to the trial court's interpretation. *Id.* Rather, we "independently review the statute's meaning and apply it to the facts of the case under review." *Id.*

Our goal when interpreting a statute is "to determine, give effect to, and implement the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience." *Bushong*, 790 N.E.2d at 471. If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. *Kaser*, 811 N.E.2d at 932. Rather, we must give such a statute its "plain and clear meaning." *Bobrow v. Bobrow*, 810 N.E.2d 726, 732 (Ind.Ct.App.2004).

 While the language of the statute is "the first and often the last resort" when we interpret legislation, we must also consider how the statute interacts with other provisions in the same legislation. *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 460 (Ind.2003). We may not interpret one provision of a statute in a manner that renders other provisions of the statute meaningless. *Kaser*, 811 N.E.2d at 932. We must consider simultaneously the purpose of the statute and the repercussions of any

interpretation. *Bushong*, 790 N.E.2d at 471. The intent underlying the provision as a whole controls over "the strict literal meaning of any word or term." *Id.*

Subsection 12.1(h) indicates the Board did not have discretion and was required to move Henderson to retirement status because he was on disability and he was over the age of fifty-five. Nevertheless, Henderson maintains he was entitled to a hearing pursuant to Ind.Code § 36-8-7-11, which addresses "[m]embers retiring due to disability or inability to perform essential functions of the job." Subsection (d) of that statute provides:

> If after the hearing[1] the local board determines that a person who became disabled before July 1, 2000, is disabled and unable to perform the essential functions of the job, considering reasonable accommodation to the extent required by the Americans with Disabilities Act, the local board shall then authorize the monthly payment to the person from the 1937 fund of an amount equal to fifty-five percent (55%) of the salary of a fully paid first class firefighter in the unit at the time of the payment of the pension. All physical and mental examinations of members of the fire department shall be made on order of the local board by a medical officer designated by the local board.

Ind.Code § 36-8-7-11(d) (hereinafter "Subsection 11(d)") (footnote added).

Henderson asserts construing the statutes together, as we must, requires we read the hearing requirement of Subsection 11(d) into subsection 12.1(h), even though it includes no such requirement. He is incorrect.

The construction of the statutes Henderson requests would render Subsec-

---

1. "[T]he hearing" is a reference to Ind.Code § 36-8-7-11(c), which provides: "The local board may retire a person for disability only after a hearing conducted under IC 36-8-8-12.7."

tion 12.1(h) meaningless, because no disabled firefighter who reached the age of fifty-five could be transferred to regular retirement status without being afforded the hearing required under Subsection 11(d). We may not interpret one provision of a statute in a manner that renders other provisions of the statute meaningless. *See Kaser*, 811 N.E.2d at 932.

The two subsections control two distinct matters regarding disabled firefighters. Subsection 12.1(h) controls the transfer from disability to regular retirement status of all firefighters the Board had placed on disability status prior to June 30, 2000. Subsection 11(d) controls the process by which firefighters who were injured prior to June 30, 2000, but not yet determined to be disabled, are placed on retirement due to a disability. This reading allows us to give each section its plain meaning without rendering either section meaningless.

Accordingly, the Board correctly determined Subsection 12.1(h) required it to transfer Henderson to regular retirement status. Henderson was on disability leave and was over the age of fifty-five. Pursuant to Subsection 12.1(h), the Board was not required to hold a hearing to determine whether Henderson was still disabled.

Henderson also asserts the Board's application of Subsection 12.1(h) to him violates his contractual right to return to work when he was no longer disabled. Henderson asserts the statutes in effect when he was placed on disability in 1997 provided him the right to come back to work when he was no longer disabled, but he has not directed us to any statute that so provided. We will not search the historical versions of the Code to find such a statute, and this argument is waived. *See Supervised Estate of Williamson v. Williamson*, 798 N.E.2d 238, 242 (Ind.Ct.App. 2003) ("By failing to direct us to the controlling code section, the [appellant] waived any argument based on that statute.").[2]

Henderson has not demonstrated the Board erred when, without a hearing, it transferred him to regular retirement status pursuant to Subsection 12.1(h). Therefore, the trial court properly granted summary judgment to the Board.

Affirmed.

DARDEN, J., and BARNES, J., concur.

2. Assuming *arguendo* a statute provided a firefighter who was no longer disabled could return to work from disability leave, we disagree with Henderson's allegation that such a statute created an "enforceable contract" between him and the Board. (Appellant's Br. at 6.) As we stated in *Haverstock v. State Public Employees Retirement Fund*, 490 N.E.2d 357, 360 (Ind.Ct.App.1986), *reh'g denied, trans. denied:*

In order for a right to vest or a liability to be incurred it must be immediate, absolute, complete, unconditional, perfect within itself and not dependent upon a contingency. Moreover, it is well settled a mere expectance of a future benefit, or a contingent interest in property founded on anticipated

continuance of existing laws, does not constitute a vested right.
(internal quotations and citations omitted). Henderson's 1997 request for disability benefits may have created a contractual right to receive the disability benefits. It did not, however, create a vested contractual right to later be returned to active duty status, as such a transfer from disability was conditioned on Henderson demonstrating he was no longer disabled. The case Henderson cites, *City of Mishawaka v. Squadroni*, 486 N.E.2d 1088, 1091–92 (Ind.Ct.App.1985) (holding right to pension becomes vested upon meeting of statutory criteria for retirement), *reh'g denied, trans. denied,* does not require a different result.